IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| WEYLIN HEATH STEWART and STEPHANIE STEWART BIJOLLE, Co-Administrators of the Estate of KEVIN LEWIS STEWART, deceased, and as son and daughter and next-of-kin of KEVIN LEWIS STEWART, deceased, | ) ) ) ) ) ) ) ) | |
| Plaintiffs; | ) ) | |
| vs. | ) ) | 7:12-cv-589-LSC |
| HEWLETT-PACKARD COMPANY, et al., | ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OF OPINION

I.  Introduction

The above-entitled matter was removed on February 17, 2012, to this Court by the Alabama Power Company, Aaron's Sales & Lease Ownership, Inc., the Hewlett-Packard Company, Sony Corporation of America, Sony Electronics, Inc., and Sony Computer Entertainment America, Inc. (collectively "Defendants"), asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. Before the Court is Plaintiffs

Weylin Heath Stewart and Stephanie Steward Bijolle's Motion to Remand (Doc. 12), filed on March 12, 2012. Plaintiffs seek to remand this cause of action for lack of subject matter jurisdiction because one of the named defendants, the Alabama Power Company ("APCO"), is a citizen of the State of Alabama, the state in which the suit was filed and the Plaintiffs' state of residence. (*Id.*) Additionally, Plaintiffs request that this Court order Defendants to pay just costs and any actual expenses, including attorney fees, incurred as a result of the removal. (*Id.* at 12.) Defendants argue that APCO was fraudulently joined in the complaint, and its citizenship should not be considered when determining whether complete diversity exists. (Doc. 15.) The issues raised in Plaintiffs' Motion to Remand have been fully briefed by both parties and are now ripe for decision.

II.   Facts

This case arises out of a fire that occurred on November 20, 2009, in which Kevin Lewis Stewart died and his residence was destroyed by fire. Plaintiffs Weylin Heath Stewart and Stephanie Steward Bijolle are both the son and daughter of Kevin Lewis Smith and the duly appointed and acting co-administrators of his estate. Plaintiffs argue that the fire originated in a laptop computer owned by Stewart and present in the residence at the time of the fire.

On November 16, 2011, Plaintiffs filed the present action in the Circuit Court of Walker Count, Alabama, alleging, *inter alia*, negligence and wantonness against APCO in the manner in which APCO delivered electricity to the Stewart residence. In addition to APCO, Plaintiffs have also named Aaron's Sales & Lease Ownership, Inc. ("Aaron's"), the Hewlett-Packard Company ("HP"), and Sony Energy Devises Corporation of Japan, Sony Corporation, Sony Corporation of America, Sony Electronics, Inc., and Sony Computer Entertainment America, LLC (collectively "Sony"), as defendants. Plaintiffs assert that Aaron's was the distributor of the defective laptop computer, HP was the manufacturer of the laptop computer, and Sony provided a defective, unreasonable dangerous battery or battery assembly for the laptop computer.

III.   Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). For removal to be proper, the court must have subject-matter jurisdiction in the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In addition, the removal statute must be strictly

construed against removal, and any doubts should be resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Defendants bear the burden of establishing subject-matter jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).

IV.   Analysis

   A.   Fraudulent Joinder

In order to exercise jurisdiction over an action pursuant to § 1332(a), this Court must assure itself that the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See, e.g., Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Because it removed this action, Defendants have the burden of establishing the propriety of diversity subject-matter jurisdiction. *See Wilson*, 257 U.S. at 97.

"Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Plaintiffs are resident citizens of Alabama, as is Defendant APCO. At first glance, complete diversity appears to be lacking. Defendants argue, however, that APCO has been fraudulently joined to this action.

This Court is free to disregard the citizenship of any defendant it determines has

been fraudulently joined. *Id.* at 1287. In *Triggs*, the Eleventh Circuit Court of Appeals described three situations when a defendant can be considered to have been fraudulently joined:

> Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity. Joinder has been deemed fraudulent in two situations. The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. In *Tapscott [v. MS Dealer Service Corp.]*, 77 F.3d at 1355 (11th Cir. 1996), a third situation of fraudulent joinder was identified—i.e., where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.

*Id.* (internal citations omitted).

The burden on the removing party to prove fraudulent joinder, however, is a "heavy one." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *see also, De Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). In assessing a fraudulent joinder objection, "the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *De Perez,* 139 F.3d at 1380. The "determination of whether a resident has been fraudulently joined must be based upon the plaintiff's pleadings at

the time of removal, *supplemented by any affidavits and deposition transcripts submitted by the parties.*" *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005) (emphasis in original) (quoting *De Perez*, 139 F.3d at 1380).

In addition to factual considerations, the Plaintiff must state a valid claim. However, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Triggs*, 154 F.3d at 1287 (internal citations omitted). When assessing possibility, the Eleventh Circuit has colorfully stated that "[i]n considering *possible* state law claims, possible must mean more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role." *Legg*, 428 F.3d at 1325 n.5 (internal citations omitted). In other words, a plaintiff must show that the potential for legal liability is "reasonable" and "not merely theoretical." *Id.* (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 1992)).

Plaintiffs' only claim against APCO is for negligence and wantonness under Alabama law. Specifically, Plaintiffs argue that APCO "negligently and/or wantonly provided electrical power to Plaintiffs' decedent (Kevin Stewart's) property and home

in such a way as to cause and/or allow power surges to occur at regular frequent and random times." According to Plaintiffs, "[t]hese power surges would cause the electrical appliances to experience sudden high voltages/low voltages and these surges combined with the condition of the computer and its component parts to cause and/or allow an overheating in the computer thereby causing/allowing a fire to start which fire caused Kevin Stewart's wrongful death." (Doc. 1-1 at 27.) Further, Plaintiffs argue that APCO "improperly supervised, improperly trained and improperly supplied its employees with inadequate equipment that was required to handle power surges or their causes," (*Id.* at 34), and APCO "had been notified of the frequent power surges at the Plaintiff/Decedent Kevin Lewis Stewart's home and they responded in an untimely manner regarding the power surges." (*Id.* at 35.)

The Alabama Supreme Court has described negligent or wanton conduct as follows:

> The elements of a negligence claim are a duty, a breach of that duty, causation, and damage. *AALAR, Ltd., Inc. v. Francis*, 716 So. 2d 1141, 1144 (Ala. 1998). At common law, a duty of due care can accompany a contractual obligation; *see Pugh v. Butler Tel. Co.*, 512 So. 2d 1317, 1319 (Ala. 1987). In addition, a duty of due care can arise in the absence of a contract, based on "a number of factors, including public policy, social considerations, and foreseeability [of harm]." *Smitherman v. McCafferty*, 622 So. 2d 322, 324 (Ala. 1993). "The ultimate test of the existence of a duty to use due care is found in the foreseeability that harm may result

if care is not exercised." *Buchanan v. Merger Enters., Inc.*, 463 So. 2d 121, 126 (Ala. 1984). "Due care is relative always and much depends upon the facts of the particular case." *Cox v. Miller*, 361 So. 2d 1044, 1048 (Ala. 1978).

This Court has defined "wanton conduct":

> "'[The] doing of some act or something with reckless indifference to the consequences of said act, or . . . a failure or omission to do something, with reckless indifference to the consequences of such failure or omission, that is, that the party acting or failing to act is conscious of his conduct, and even though without any actual intent to injure is aware from his knowledge of existing circumstances and conditions that his conduct would probably result in injury to another or in damage to his property.'"

*Weatherly v. Hunter*, 510 So. 2d 151, 152 (Ala. 1987), quoting *W.T. Ratliff Co. v. Purvis*, 292 Ala. 171, 291 So. 2d 289 (1974).

*Armstrong Business Services, Inc. v. AmSouth Bank*, 817 So. 2d 665, 679–80 (Ala. 2001).

There is no doubt that, under the facts as alleged by Plaintiffs in the complaint, a possible claim of negligence and wantonness under Alabama law arises out of APCO's conduct. APCO owed a duty of due care to Stewart, either through a contract for services or through the foreseeability of harm if power surges were allowed to occur at a residential dwelling or if its employees were improperly trained in handling such surges. *See George v. Alabama Power Co.*, 13 So. 3d 360, 364 (Ala. 2008) ("APCo owes 'a duty to conduct and operate its electric utility business in a reasonably safe and

prudent manner so as to avoid unreasonable risks and dangers to its customers and to the public.'") (quoting *Dunn v. Wixom Bros.*, 493 So. 2d 1356, 1359 (Ala. 1986)). APCO possibly breached this duty either by allowing these power surges to occur or by not properly training its employees in handling these surges, despite being notified of their frequency. If the alleged power surge issue was resolved by APCO, Stewart's laptop computer would presumably not have caught fire; therefore, APCO's breach was the cause-in-fact of Stewart's wrongful death and the damage to his residence. Furthermore, it is foreseeable that a customer may have a faulty piece of electrical equipment, and that a power surge could cause this faulty piece of equipment to ignite, causing damage and potentially death to the customer; therefore, APCO's breach was the proximate cause of the damage to Stewart's residence and his wrongful death. Thus, APCO's conduct, as set out in Plaintiff's complaint, was possibly negligent. Additionally, APCO failed to act with reckless indifference to the consequences of such failure when it was notified of the frequent power surges at Stewart's home but responded in an untimely manner. Thus, APCO's conduct, as set out in Plaintiffs' complaint, was possibly wanton.

It would appear, if the Court accepts the factual allegations in the complaint as true, that Plaintiffs have stated a possible claim under Alabama law against APCO, and

remand would be appropriate. However, when there are disputed issues of fact, "[t]he proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)." *Legg*, 428 F.3d at 1322–23 (internal citations omitted). Even though factual considerations are resolved in favor of the plaintiff, "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor." *Id.* at 1323. In other words, if the Defendant offers sworn statements supporting the allegation of fraudulent joinder, the Plaintiff must present evidence to dispute the assertions in the affidavits or other evidence. *Id.* When evidence submitted by the Defendant is undisputed, "the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint." *Id.* The Court simply cannot, "*in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" *Id.* (quoting *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393–94 (5th Cir. 2000) (emphasis in original) (internal citations omitted)).

In their Notice of Removal (Doc. 1), Defendants allege that Plaintiffs improperly joined APCO for the purpose of defeating diversity jurisdiction and invoking Alabama's state court jurisdiction. The Affidavit of William Burroughs (Doc. 1-2), a Distribution Support Manager employed by APCO, was attached to the Notice of

Removal. Therein, Burroughs states that, based on his review of the business records made, kept, and maintained by APCO in the ordinary course of business, the supply of voltage to Stewart's residence on November 20, 2009, was within the voltage parameters established by the Alabama Public Service Commission (the "APSC"). Assuming, *arguendo*, that Burroughs' statement establishes that there was no power surge on November 20, 2009, then there can be no claim for negligence or wantonness. Either APCO did not breach a duty because they did not allow a power surge to occur at Stewart's residence, or, alternatively, any breach of a duty–such as failure to properly supervise, train, and supply its employees with adequate equipment–was not the cause of the Plaintiffs' damages.

Plaintiffs make several arguments in their reply brief for why Burroughs' affidavit is not evidence material to the issue of fraudulent joinder. (Doc. 17.) In their most convincing argument, Plaintiffs contend that Burroughs' affidavit is not contradictory to their allegations because he does not make clear what voltage parameters he is referring to, or what the voltage parameters are. These statements, Plaintiffs allege, do not foreclose the possibility that a power surge was either present or a contributing factor to the fire at Stewart's residence–they only act as evidence diminishing the likelihood that a power surge contributed to the fire.

The Court is satisfied with this argument. Although the allegations of fact in the affidavit must be taken as true because Plaintiffs have not presented evidence to dispute them, the only thing that Burroughs' affidavit demonstrates is that the voltage supplied to Stewart's residence on November 20, 2009, was within the voltage parameters established by the APSC. It does not state that a power surge did not occur at Stewart's residence on that date. "When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538. Therefore, the Court can only assume that the voltage supplied to the Stewart residence was within the APSC's voltage parameters.

The general rule is that "[c]ompliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions." Restatement (Second) of Torts § 288C (1965). The rule appears to be the same under Alabama law. *See Baugus v. City of Florence*, 985 So. 2d 413, 420–21 (Ala. 2007) (city can breach standard of care in *allowing* methane gas to migrate from landfill after its closure, despite complying with ADEM regulations in the Alabama Administrative Code only requiring city to *monitor* methane levels postclosure). Further, compliance with operating and engineering

practices that are recognized as "safe and prudent" does not preclude a finding that a utility company was negligent. *Alabama Power Company v. Robinson*, 404 So. 2d 22, 24 (Ala. 1981). *See also Dunn v. Wixom Brothers*, 493 So. 2d 1356, 1359 (Ala. 1986) ("customary practices or standards do not furnish a conclusive test of negligence").

In the absence of any Alabama law stating that a utility company cannot be found liable when it follows the APSC's established voltage parameters, this Court must assume that there can be a possible claim for negligence and wantonness against a utility company despite following said voltage parameters. Although Burroughs' affidavit may make a negligence claim against APCO less likely, it does not relegate its potential to that of a meteor falling from the sky and striking Stewart's residence. Thus, a claim of negligence and wantonness against APCO is still possible, reasonable, and not merely theoretical, and there is no fraudulent joinder in this case.

B.   Payment of Just Costs and any Actual Expenses

In addition to their request to remand this action back to the Circuit Court of Walker County, Alabama, Plaintiffs request that this Court require Defendants to pay just costs and any actual expenses, including attorney fees, incurred as a result of the removal of this case pursuant to 28 U.S.C. § 1447(c). The federal removal statute provides for such fee shifting against a party who removes a case for the purpose of

prolonging litigation and imposing costs on the opposing party. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). " Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* at 141.

In this case, Defendants had an objectively reasonable basis for removal to federal court. When Defendants removed this action to federal court, they attached an affidavit potentially showing that a power surge could not have occurred at Stewart's residence on November 20, 2009. Therefore, they possessed legitimate grounds upon which to believe Plaintiffs' negligence and wantonness claims against APCO were not possible, and fee shifting is not appropriate.

V.  Conclusion

For the foregoing reasons, Plaintiffs' Motion to Remand is due to be GRANTED in part and due to be DENIED in part. Plaintiffs' request that this case be remanded back to the Circuit Court of Walker County, Alabama, is due to be GRANTED. Plaintiffs' request that Defendants to pay just costs and any actual expenses, including attorney fees, incurred as a result of the removal is due to be DENIED. A separate order will be entered consistent with this Opinion.

Done this 29th day of November 2012.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

171032